# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "**Settlement**" or "**Agreement**") is made this 15th day of January, 2026, by and among (i) CGH Technologies, Inc. ("**CGH**"), (ii) Glyn Neal Owen ("**Debtor**"), and (iii) Deliese Owen ("**Mrs. Owen**") (collectively, the "**Parties**").

## RECITALS

**WHEREAS**, on June 4, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "**Bankruptcy Court**"), at Case Number 25-11132 (the "**Bankruptcy Case**");

**WHEREAS**, prior to the Petition Date, CGH had obtained judgments against the Debtor in the Superior Court of the District of Columbia ("**Superior Court**") in the amount of $163,382.44 on February 24, 2022; and in the amount of $928,726.00 on October 12, 2023, amended by the Superior Court up to $977,815.50 on December 15, 2023, which have continued to accrue interest (the "**Judgments**");

**WHEREAS**, on June 23, 2025, the Debtor filed his bankruptcy schedules at Dkt #26, which among other assets, listed an IRA with Fidelity (the "**Fidelity IRA**") and an IRA Annuity with Athene (the "**Athene Annuity**"), and claimed both IRAs as exempt;

**WHEREAS**, on August 15, 2025, CGH filed an Objection to the Debtor's Claim of Exemptions with respect to the Fidelity IRA at Dkt #37; and on August 18, CGH filed a Supplemental Objection to the Debtor's Claim of Exemptions with respect to the Athene Annuity at Dkt #38 (together, the "**Objection to Exemptions**");

**WHEREAS**, on September 8, 2025, CGH filed a Complaint for Determination of Dischargeability of Debt with respect to the Judgments, pursuant to sections 523(a)(4) and 523(a)(6) of the Bankruptcy Code, at Adv No. 25-1056 (the "**Adversary Proceeding**");

**WHEREAS**, on October 6, 2025, CGH filed a proof of claim against the Debtor in the total amount of $1,254,595.20, of which $472,051.10 is asserted as a secured claim and $782,544.10 is asserted as an unsecured claim (the "**Proof of Claim**");

**WHEREAS**, in connection with its efforts to collect the Judgments, CGH has filed a claim against Prudential Insurance Company in the Circuit Court for Prince William County (the "**Garnishment Case**"), and the Bankruptcy Court has entered relief from the automatic stay to allow CGH to pursue the Garnishment Case; and

**WHEREAS**, by this Settlement, the Parties have agreed in good faith to settle their respective claims in the Adversary Proceeding, the Objection to Exemptions, the Proof of Claim, the Estate Case, and the essential terms of a Chapter 11 Plan.

## AGREEMENT

1. Recitals. The foregoing Recitals are hereby incorporated by reference.

2. CGH Allowed Claims. CGH shall have an allowed claim in the amount of $1,254,595.20 with the secured amount determined and satisfied as set forth in paragraphs 3 and 4 below and the unsecured amount determined and treated under the Debtor's Plan as set forth in paragraphs 5 and 6.

3. Real Property.

   a. The Debtor's residence at 1131 Tournai Court, Woodbridge, Virginia (the "**Residence**") has (i) an agreed value of $745,425.00; (ii) a first priority lien in favor of Rocket Mortgage in the amount of $443,248.90; (iii) an exemption in favor of the Debtor in the amount of $53,629.00, and (iv) non-exempt equity in favor of CGH in the amount of $248,547.10.

   b. The North Carolina property at 2 Shamrock Way (Lot 203), Pinehurst, North Carolina (the "**North Carolina Property**") has an agreed value of $75,000.

   c. The Residence and North Carolina Property (together, the "**Real Property**") are deemed to be solely owned by the Debtor, and Ms. Owen has no ownership interest in such property. Notwithstanding the foregoing, the North Carolina Property may remain titled to Debtor and Mrs. Owen unless it is sold or conveyed to CGH per the terms hereof, provided the terms of this Agreement and the Plan are satisfied.

   d. The secured claim of CGH will be allowed in the amount of $323,547.10 (the "**CGH Secured Claim**"), including $248,547.10 on account of its judgment against the Residence and $75,000.00 on account of its judgment against the North Carolina Property. The CGH Secured Claim will start to accrue interest at 7.75% on the Effective Date of the Plan.

   e. The Debtor may elect through the Plan, to satisfy the CGH Secured Claim by liquidating the Real Property, and paying net proceeds of sale to CGH. If the Debtor decides to liquidate the North Carolina Property, then the Plan will allow CGH the option to require the Debtor to transfer the North Carolina Property to CGH in exchange for a $75,000 credit and reduction of the CGH Secured Claim. If the net proceeds of the sale and/or credit are insufficient to pay the CGH Secured Claim in full, then the balance of the CGH Secured Claim, with interest at the agreed rate, if applicable, will be satisfied through the Plan.

4. Athene Annuity. The Athene IRA Annuity scheduled by the Debtor in the amount of $655,171.71 is exempt, and the order approving this settlement will overrule the CGH objection thereto. The Debtor will satisfy the CGH Secured Claim in full from the Athene Annuity or other

2

exempt or non-estate assets, unless he elects to satisfy all or part of the claim by liquidating the Real Property as set forth in paragraph 3(e) above.

5. <u>Fidelity IRA</u>. The Fidelity IRA scheduled by the Debtor in the amount of $519,651.32 is not exempt, and the order approving this settlement will sustain the CGH objection thereto. The Debtor will liquidate the Fidelity IRA on or before January 31, 2026, and provide copies of the Fidelity statements for the months the account was opened and closed, to CGH. The net proceeds from liquidation of the Fidelity IRA (less Reserves of $20,000 for legal fees, $5,000 for accountant fees, $215,000 for taxes, $5,000 for U.S. Trustee fees, and $8,000 for IRS priority claim) will be paid to general unsecured creditors under the Debtor's Plan within 30 days of confirmation of the Plan ("**Plan Effective Date**").

6. <u>CGH Unsecured Claim</u>. CGH shall have an allowed general unsecured claim in the amount of $931,048.10 (the "**CGH GUC Claim**"), which will be paid an initial distribution, on a pro-rata basis with any other allowed general unsecured claims, on the Plan Effective Date. The CGH GUC Claim will receive a second and final pro-rata distribution, under the Plan from any remaining funds in the Reserves.

7. <u>Ms. Owen Claim</u>. The general unsecured claim of Deliese Owen scheduled in the amount of $222,600, shall be an allowed claim but subordinated to all other allowed general unsecured claims.

8. <u>Court Approval</u>. The Settlement is subject to approval of the Bankruptcy Court. On or before January 15, 2026, the Debtor will file a Motion to Approve this Settlement under Bankruptcy Rule 9019, and will promptly schedule the Motion for hearing.

9. <u>Chapter 11 Plan</u>. Within twenty (20) days after Court approval of this Settlement, the Debtor will file a disclosure statement and a chapter 11 plan ("**Plan**") that incorporates the terms of this Settlement. CGH will vote in favor of the Plan. If the Plan is not confirmed, and the Bankruptcy Case is converted to Chapter 7, then the terms of the Settlement will survive conversion and become binding on the Chapter 7 trustee.

10. <u>Dismissal of the Adversary Proceeding</u>. Pending Bankruptcy Court approval of this Settlement and pending confirmation of the Plan, the Parties agree to stay the Adversary Proceeding. Upon the effective date of the Plan and completion of the terms of the Settlement, CGH will dismiss the Adversary Proceeding with prejudice.

11. <u>Default</u>. If the Debtor defaults on any term of this Settlement, CGH will provide a five (5) day notice of cure. If the Debtor fails to timely cure the default, then CGH may file a consent order in the Adversary Proceeding for the full remaining amount of the CGH Allowed Claims as set forth in paragraph 2, less any payments received or credits to which Debtor is entitled.

12. <u>Discharge</u>. For avoidance of doubt, the Debtor will not be entitled to a discharge of the CGH Allowed Claims until he completes all obligations under the Settlement. Upon completion of all terms of the Settlement, the CGH Allowed Claims will be deemed discharged, the Judgments will be withdrawn, and the Adversary Proceeding will be dismissed.

13. <u>Release</u>. All Parties acknowledge this Agreement is intended to fully resolve the Adversary Proceeding, the Objection to Exemption, and the Proof of Claim in the Bankruptcy Case, as well as CGH's fraudulent transfer litigation. Upon satisfaction of the obligations hereunder, CGH releases Deliese Owen from any and all claims, known or unknown, and shall dismiss the fraudulent conveyance and any other proceedings in North Carolina and Virginia with prrejudice. This Agreement does not impair CGH's right to pursue Prudential in the Garnishment Case; provided however, that CGH will reduce its claim against Prudential ($519,651.00 plus attorneys' fees) by the amount CGH receives on account of the liquidation of the Fidelity IRA under the Plan. The Debtor and Mrs. Owen fully release CGH and all of its officers, directors, employees, and representatives from any and all claims, known or unknown.

14. <u>Nondisparagement</u>. Each Party agrees they will not make any statements which disparage another Party.

15. <u>Predecessors, Successors, and Assigns</u>. All persons or business entities granting releases hereby include any assignee, predecessor in interest, or successor in interest of the respective grantor. All persons or business entities released hereby include any predecessor in liability or successor in liability for the released liability.

16. <u>Representations and Warranties</u>. It is acknowledged that the Parties have read this Agreement and have consulted their respective legal counsel, or knowingly chosen not to consult legal counsel, before executing same; the Parties have relied upon their own judgment and/or that of their respective legal counsel in executing this Agreement and have not relied on or been induced by any representation, statement or act by any other party which is not referred to in this Agreement; each Party enters into the Agreement voluntarily, with full knowledge of its significance; and the Agreement is in all respects complete and final. Each Party warrants and represents that (a) it is the sole owner of its respective rights and claims against the other Party, and it has not assigned, transferred, or conveyed any rights or claims it may have against the other to any third person or entity; and (b) each Party has full power and authority to enter into and perform this Agreement without the consent of or duty to notify any other person, entity, or regulatory authority, other than the Bankruptcy Court.

17. <u>Legal Fees and Costs</u>. Each Party shall pay its own respective costs and attorney's fees incurred with respect to this Agreement and all related matters.

18. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement with respect to the subject matter addressed herein and supersedes any prior written and/or verbal agreements between the Parties.

19. <u>Amendments</u>. This Agreement may not be orally modified. This Agreement may only be modified in a writing signed by each Party.

20. <u>Headings</u>. All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of the Agreement.

21. <u>Construction</u>. As used herein, the plural shall include the singular, and the singular shall include the plural, unless the context or intent indicates to the contrary. "Person" shall include

4

natural persons, corporations, partnerships, and/or any other entity which by law is treated as or has the rights of a natural person.

22. <u>Preparation of Agreement and Construction</u>. This Agreement has been prepared by CGH's counsel, with a full opportunity for the Parties to negotiate its terms. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is hereby waived.

23. <u>Waiver and Modification</u>. The failure of either or both of the Parties to insist, in any one or more instances, upon the strict performance of any of the covenants of this Agreement, or to exercise any option herein contained, shall not be construed as a waiver, or a relinquishment for the future of such covenant or option, but the same shall continue and remain in full force and effect.

24. <u>Jurisdiction and Choice of Law</u>. By this Agreement, each Party submits to the jurisdiction of the United States Bankruptcy Court for the Eastern District of Virginia for any action to enforce or interpret this Agreement. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia (regardless of the laws that might otherwise govern under applicable Virginia principles of conflicts of law) as to all matters, including but not limited to matters of validity, construction, effect, performance, and remedies.

25. <u>Counterparts and Facsimile Signatures</u>. This Agreement may be executed in counterparts and such counterparts when so executed shall together constitute the final Agreement as if one document had been signed by the Parties. This Agreement may be executed by facsimile or electronic copy and each signature thereto shall be and constitute an original signature, again as if the Parties had executed a single original document.

26. <u>Further Necessary Actions</u>. To the extent that any document is reasonably required to be executed by a Party to effectuate the purposes of this Agreement, the Party will execute and deliver promptly such document to the requesting Party.

27. <u>Notices</u>. Any and all notices required or permitted under this Agreement shall be in writing and shall be sent via both electronic mail and either regular mail or by overnight delivery to the respective Party at the following addresses, unless and until a different address has been designated by written notice to the other Party:

<u>Notice to the Debtor</u>:

Daniel M. Press, Esq.
Chung & Press PC
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
Telephone: (703) 734-0590
Email: dpress@chung-press.com

<u>Notice to CGH:</u>

Kip Schwartz, Esq.
Law Office of Kip Schwartz, PLLC
15200 Wycliffe Court
Rockville, Maryland 20853
Telephone: (202) 297-2022
Email: kschwartz@ksesq.com

and

Steven B. Ramsdell, Esq.
Tyler, Bartl & Ramsdell, P.L.C.
300 N. Washington Street, Suite 310
Alexandria, Virginia 22314
Telephone: (703) 549-5003
Email: sramsdell@tbrclaw.com

In witness whereof, the Parties have executed this Settlement Agreement effective as of the date first written above.

**CGH TECHNOLOGIES, INC.**

By: _____          Dated: 01/15/2026

Its: _____

**DEBTOR**

_____              Dated: 14-1-26
Glyn Neal Owen, individually

**MS. OWEN**

_____              Dated: _____
Deliese Owen, individually

6

## AUTHORIZATION TO EXECUTE SETTLEMENT AGREEMENT

Carmen Kopas, Personal Representative for the Estate of Cindy Darlene Troutman (Estate No. 135878 before the Prince George's County Register of Wills), and, in that capacity, the sole shareholder CGH Technologies, Inc., after reviewing the proposed Settlement Agreement, hereby consents to and authorizes the execution of a Settlement Agreement by Shelley Lewis, as Acting President of CGH Technologies, Inc., for the purpose of settling a claim against Glyn Owen in his Chapter 11 Bankruptcy Case No. 25-11132-KHK, which is pending in the Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.

Dated this 13 day of JANUARY, 2026.

_____
CARMEN KOPAS, Personal Representative
of the Estate of Cindy Darlene Troutman