**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

```
-------------------------------------------------------------X
In re:                                          :    Chapter 11
                                                :
Glyn Neal Owen                                  :    No. 25-11132-KHK
                                                :
              Debtor.                           :
                                                :
-------------------------------------------------------------X
```

**DISCLOSURE STATEMENT IN SUPPORT OF**
**DEBTOR'S CHAPTER 11 PLAN**
**DATED MARCH 2, 2026**

Glyn Neal Owen, Debtor in Possession, through the undersigned counsel, hereby submits to his creditors this Disclosure Statement in connection with his Chapter 11 Plan dated March 2, 2026 (the "Plan") pursuant to Chapter 11 of Title 11, U.S.C. (the "Code").

### I.     Preliminary Statement

The Debtor submits this Disclosure Statement to all of his creditors in order to comply with the provisions of the Code requiring the submission of information necessary for creditors to arrive at an informed decision in exercising their rights to vote for acceptance or rejection of the Plan, presently on file with the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"). A copy of the Plan accompanies this Disclosure Statement.

### II.    Summary of Plan and Code Provisions for Voting

#### A.     Repayment of Creditors

The Plan provides for payment of allowed administrative expenses, priority claims, and secured claims in full, and unsecured claims in part, either in cash or in deferred cash payments. This is a reorganizing Plan. The reorganization will result in the retention of Debtor's property and payment of secured claims thereon. The Plan will be funded by the Debtor's exempt or non-estate assets and liquidation of non-exempt assets.

This Disclosure Statement contains a detailed discussion of the Plan and its implementation. This Disclosure Statement should be read in conjunction with the Plan, which is a legal document and upon confirmation will become binding on the Parties. Creditors should read the Plan and this Disclosure Statement in their entirety, rather than

Daniel M. Press, VSB# 37123
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
dpress@chuing-press.com
Counsel for Debtor

relying on this summary. The Debtor urges creditors and other parties in interest to consult with independent counsel in connection with their decision to accept or reject the Plan. Approval of this Disclosure Statement by the Court is not a decision on the merits of the Plan.

    B.    **VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS**

    1.    Ballots and Voting Deadline.

A Ballot[1] to be used for voting to accept or reject the Plan will be distributed, along with this Disclosure Statement and the Plan, upon approval of the Disclosure Statement by the Bankruptcy Court. Creditors of the Debtor must (1) carefully review the Ballot and instructions thereon; (2) execute the applicable Ballot; and (3) return the completed Ballot to Chung & Press, P.C., Attn: Daniel M. Press, Esq., 6718 Whittier Ave., Suite 200, McLean, Virginia 22101 so as to be received by the deadline fixed by the Court. Ballots received after the deadline may not be considered.

    2.    Creditors Entitled to Vote.

Any Creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote, provided that (1) its Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent or unliquidated), or (2) it has filed a Proof of Claim on or before the last date set by the Court for such filing, which claim has not been disallowed, and no objection to such Proof of Claim is pending at the time of the confirmation hearing. Any Class of Claims or Interests that is not impaired by the Plan, and each holder of a Claim or Interest of such Class, are conclusively presumed to have accepted the Plan and solicitation of acceptances with respect to such Class from the holders of Claims or Interests of such Class is not required.

Any Claim or Interest as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Court temporarily allows the Claim or Interest in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by the Creditor or holder of an Interest whose Claim or Interest is subject to objection. In addition, the vote of a Creditor or holder of an Interest may not be counted if the Court determines that the Creditor's or Interest holder's acceptance or rejection was not solicited or procured in accordance with the provisions of the Bankruptcy Code.

Even though a creditor may not choose to vote or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each class of creditors and/or is confirmed by the Court. Allowance of a claim for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed only for distribution after determination by the Court. Such determination may be made after the Plan is confirmed.

---

[1] Under the Plan, the term "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

3. <u>Definition of Impairment.</u>

Under § 1124 of the Bankruptcy Code, a Class of Claims or Interests is impaired under a plan of reorganization unless, with respect to each Claim or Interest of such Class, the plan (1) leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or Interest, or (2) reinstates the Claim or Interest pursuant to its original terms and cures any default.

4. <u>Classes Impaired Under the Plan.</u>

Creditors holding Claims in Classes C and D are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan. Creditors holding Claims in Classes A and B are unimpaired under the Plan and are not entitled to vote with respect to the acceptance or rejection of the Plan. Such Creditors will be paid in full or otherwise treated in accordance with the provisions of the Plan.

5. <u>Vote Required for Class Acceptance</u>

The Bankruptcy Code defines acceptance of a Plan by a Class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Allowed Claims of that Class which actually cast ballots to accept or reject the Plan.

6. <u>Requirements for Confirmation</u>.

In order to be confirmed (i.e., approved) by the Bankruptcy Court, the Plan or its proponent must (among other requirements set forth in § 1129 of the Bankruptcy Code):

    a. Disclose all compensation paid or promised for professional services rendered or to be rendered in connection with the case;

    b. Disclose the identity and affiliations of all officers to serve after the Plan is confirmed and the compensation of any insiders to be employed after Confirmation;

    c. Propose to pay each member of a class of Claimants, who has not accepted the Plan, property at least equal in value to what the Claimant would receive if the Debtor's assets were liquidated on the date of the Confirmation Hearing, and distributed to Creditors according to their rights and priorities under law;

    d. Propose to pay all Administrative Claims in full;

    e. Propose to pay all Priority Claims in full in deferred payments or cash; and

    f. Propose to pay all Priority Tax Claims in full within five years after the order for relief in this case, in a manner not less favorable than the non-priority unsecured claims.

7. <u>Confirmation Hearing</u>.

The Bankruptcy Code requires that the Bankruptcy Court hold a Confirmation Hearing with notice to all Creditors. The Confirmation Hearing will be held at the time fixed by the Court before the Honorable Klinette H. Kindred, United States Bankruptcy Judge, Courtroom III, 200 S. Washington Street, Alexandria, VA 22314. The Confirmation Hearing

may be adjourned or continued by the Bankruptcy Court without further notice except for an announcement made of the adjourned or continued date made at the Confirmation Hearing.

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. With respect to creditor acceptance of the Plan, if the requisite members of an impaired Class do not vote to accept the Plan as provided in Section II.B.5. above, the Debtor may seek confirmation pursuant to § 1129(b) of the Bankruptcy Code, known as the "cramdown" procedure. Pursuant to this section, the Bankruptcy Court may confirm the Plan notwithstanding the nonacceptance by an impaired Class if at least one impaired Class votes to accept the Plan, the Plan does not discriminate unfairly, and is "fair and equitable" to the non-accepting Class.

A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its Claims or Equity Interests. The Bankruptcy Code establishes different "fair and equitable" standards for Secured and Unsecured Claims.

With respect to a Secured Claim, a plan may be "fair and equitable" if (1) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its liens, (2) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (1) and (3) hereof, or (3) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

With respect to an Unsecured Claim, a plan may be "fair and equitable" if (1) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim, or (2) the holder of any Claim or Interest that is junior to the claims of the dissenting Class will not receive any property under the plan on account of such claim or interest, except that, as the Debtors are individuals, they may retain exempt property and property included in the estate under 11 U.S.C. § 1115, namely property acquired after commencement of the case and post-petition earnings.

Finally, it must be noted that even though a Creditor or holder of an Interest may vote to reject the Plan, such rejection of a confirmed Plan does not mean that the Creditor or holder of an Interest will not be entitled to share in any distributions to be made under the Plan.

### III.    **REQUISITE DISCLOSURES**

A.    Representations Limited

NO REPRESENTATIONS CONCERNING THE DEBTORS, PARTICULARLY REGARDING FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE DEBTOR'S ASSETS, HAVE BEEN AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH IN THIS STATEMENT. YOU SHOULD NOT RELY ON ANY OTHER

REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE OR REJECTION IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN.  ANY PERSON MAKING REPRESENTATIONS OR INDUCEMENTS CONCERNING ACCEPTANCE OR REJECTION OF THE PLAN SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AT THE ADDRESS ABOVE, TO THE CLERK OF THE COURT AT 200 S. WASHINGTON STREET, ALEXANDRIA, VA 22314 AND TO THE U.S. TRUSTEE AT 1725 DUKE ST, ALEXANDRIA, VA 22314.  FOR VARIOUS REASONS, THE RECORDS OF THE DEBTOR PRIOR TO PREPARATION OF THIS PLAN MAY NOT HAVE BEEN COMPLETE AND THE ACCURACY OF THE INFORMATION SUBMITTED WITH THIS STATEMENT IS DEPENDENT ON INFORMATION AVAILABLE TO THE DEBTOR WITH THE ASSISTANCE OF COUNSEL.  WHILE EVERY EFFORT HAS BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY.  THERE ARE NO KNOWN INACCURACIES.  WHILE EVERY EFFORT HAS BEEN MADE TO ENSURE THAT THE ASSUMPTIONS ARE VALID AND AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, NEITHER THE DEBTOR NOR HIS ATTORNEYS UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE ASSUMPTIONS OR PROJECTIONS.

UNLESS OTHERWISE INDICATED, NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE DEBTOR'S PROPERTY.  UNLESS AN APPRAISAL IS PROVIDED OR THE COURT HAS PREVIOUSLY DETERMINED THE VALUE OF AN ASSET, THE VALUES PLACED THEREON AND SUMMARIZED BELOW ARE THE DEBTOR-IN-POSSESSION'S BEST ESTIMATE OF THE VALUE OF THE PROPERTY AS OF THE TIME OF THE FILING OF THE PLAN AND THIS DISCLOSURE STATEMENT.  THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

B.  <u>Background</u>

The debtor is a 61-year old resident of Prince William County, Virginia.  At the time of this Disclosure Statement, and for the foreseeable future, the Debtor is unemployed.  Debtor had worked for many years at GGH Technologies, Inc. as its Chief Operating Officer, but after his personal relationship with that company's owner soured, he left the company and was sued by it in the D.C. Superior Court for alleged violations of a noncompete agreement, a non-disclosure agreement, and breach of his fiduciary duties.  CGH obtained judgments in that litigation against the Debtor in the amount of $163,382.44 on February 24, 2022; and in the amount of $928,726.00 on October 12, 2023, amended by the Superior Court up to $977,815.50 on December 15, 2023, which have continued to accrue interest.

C.  <u>Events Leading to Bankruptcy</u>

. Before the bankruptcy case (and outside the preference period), CGH docketed its judgment as a lien on Debtor's home in Woodbridge Virginia and a building lot in North Carolina,

5

attempted to garnish accounts and wages, and sought to sell Debtor's home by judicial sale. As a result, Debtor filed first a Chapter 13 case and, after that was dismissed, this case, to save his home and pay his creditors as best he could.

        D.      <u>Procedural Posture of the Bankruptcy Case</u>

On June 4, 2025 (the "Petition Date"), Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of title 11 of the U.S. Code (as amended, the "Bankruptcy Code"). The Debtor continues to hold his assets as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An unsecured creditors' committee has not been appointed in this case. No trustee or examiner has been appointed. The claims bar date passed on October 8, 2025 (December 1, 2025 for governmental claims). Debtor sought and was granted leave to employ the undersigned as his counsel in this case. The automatic stay was extended as to all creditors pursuant to § 362(c)(3)(B) of the Bankruptcy Code.

On June 23, 2025, the Debtor filed his bankruptcy schedules at Dkt #26, which among other assets, listed an IRA with Fidelity (the "Fidelity IRA") and an IRA Annuity with Athene (the "Athene Annuity"), and claimed both IRAs as exempt. CGH then timely filed objections to Debtor's claim of exemption in the two retirement accounts, one of which (Fidelity) was an inherited IRA and one of which (Athene) was from Debtor's own retirement savings and investment earnings thereon. CGH also brought an adversary proceeding against Debtor asserting that the debt reflected in its judgment should not be discharged.

After extensive negotiations over several months, the Debtor and CGH settled their disputes, which settlement was subsequently approved by the Court. The terms of the settlement are as set forth in the attached agreement, summarized as follows:

        A.      The Fidelity (inherited) IRA shall be non-exempt (payable to estate - subject to taxes etc. as administrative expenses).

        B.      The Athene Annuity (Debtor's own IRA) to be exempt.

        C.      The Debtor's residence at 1131 Tournai Court, Woodbridge, Virginia (the "Residence") has (i) an agreed value (pursuant to an appraisal) of $745,425.00; (ii) a first priority lien in favor of Rocket Mortgage in the amount of $443,248.90 as of the petition date; (iii) an exemption in favor of the Debtor in the amount of $53,629.00, and (iv) non-exempt equity in favor of CGH in the amount of $248,547.10. The NC building lot has an agreed value of $75,000.

        D.      Debtor shall pay CGH from the Athene annuity (or otherwise from exempt/non-estate assets) the amount of the non-exempt equity in the residence and the NC building in full satisfaction of the secured claim in the amount of $248,547.10 for the residence and $75,000 for the NC building lot. Alternatively, Debtor may sell either property with net proceeds after exemption to CGH and/or, at CGH's election if Debtor

6

elects to sell, deed the NC property to CGH (valued at $75K for credit purposes). Payment shall be made within 30 days of the effective date of a plan (or property listed for sale within 30 days and sold promptly). Interest to accrue at 7.75% from effective date if property to be sold and thus not paid within 30 days. Notwithstanding Debtor's right to sell the residence and the NC property, the secured claim of CGH under a plan shall be not less than $248,547.10 as to the residence plus $75,000 as to the NC property, and CGH will be paid those amounts in full under a plan, with interest at the agreed rate, if applicable.

  E. The balance of the CGH claim shall be an allowed general unsecured claim (non-priority). The Plan shall provide for disbursement of the Fidelity net proceeds within 30 days of the effective date, subject to a holdback for estimated taxes and administrative and priority claims ($20K legal fees, $5K accountant fees, $215K taxes, $5K UST fees, and $8000 IRS priority claim).

  F. The Adversary Proceeding shall be stayed pending confirmation of a plan and effectuation of the foregoing. A consent judgment of non-dischargeability shall be provided to counsel for CGH but only filed in the event of default. Upon completion of the terms of the agreement, the judgment shall be returned unfiled and the Adversary Proceeding dismissed, with CGH's claim to be discharged.

  G. CGH shall not object to, and shall be deemed to vote for, a plan that complies with the terms of the agreement.

  H. In the event the Bankruptcy Case is dismissed or converted, the parties will act to effectuate substantively the same terms, such that CGH releases Owen or Owen's debt is discharged upon receipt of proceeds as provided in the Agreement.

  I. Debtor's wife's claim shall be subordinated to general unsecured creditors.

E. <u>Assets and Income</u>

  On the Petition Date, and at present, the Debtor owns two parcels of real estate: his home at 1131 Tournai Court, Woodbridge, Virginia (the "Residence"), which is valued (pursuant to an appraisal) at $745,425.00; and a building lot at 2 Shamrock Way, Pinehurst, NC, valued at $75,000 (scheduled at $50,000, but under the settlement Debtor agreed to a $75,000 value). The NC building lot is titled to Debtor and his wife, but CGH has asserted that the transfer to her was without consideration. For purposes of the settlement, the value is being treated as all belonging to the Debtor. CGH's judgment lien attaches to both properties (junior to the mortgage on the Residence, as set forth above). Debtor has claimed $53,629.00 of value in the Residence as exempt.

  Debtor's Athene annuity, worth approximately $655,000 as of the Petition Date, is exempt. Debtor's inherited Fidelity IRA, worth approximately $520,000 on the Petition

7

Date[2], has been agreed not to be exempt.  In January - February 2026, in furtherance of the settlement, Debtor liquidated the Fidelity IRA, with total withdrawals of $526,367.83 ($441,026.86 to Debtor after tax withholding of $85,340.97).  Additional income tax will be owed by the estate on this withdrawal.   This is the only non-exempt unencumbered asset.

      F.      Creditors Committee

No creditors committee has been formed in this case.

      G.      Professionals

The Debtor has retained the firm of Chung & Press, P.C. (Daniel M. Press), as bankruptcy counsel.  The appointment of the foregoing professionals is pending approval by the Court.  The Debtor will need to retain a tax professional to prepare tax returns for the estate.

Chung & Press, P.C., received a fee and cost advance of $9813.75, including $1738 for the filing fee. $2475 was paid for prepetition services, with a balance of $5603.75 held in trust for work related to this case.  Chung & Press, P.C. expects to file an application for compensation for its fees, which are subject to court approval.  It is estimated that the fees of Chung & Press, P.C. will be in the range of $25,000 through confirmation.   The accountant's fees are estimated at $5000.00.

      H.      Officers/Directors and Compensation

As an individual debtor, the requirement to disclose the Debtor's officers and directors is inapplicable.

      I.      Bar Date

The bar date for the filing of pre-petition claims against the Debtor was on October 8, 2025 (December 1 for governmental units).   Under the Plan, Administrative Claims other than for taxes and professional fees, and any rejection claims, must be filed by the first Business Day twenty-eight (28) days after the date of the Confirmation Order.

**IV.    Classification and Treatment of Claims**

The Plan establishes 4 classes of claims, plus two categories of unclassified claims (for administrative expenses and for priority taxes).  The classes of claims are identified and treated as follows:

---

[2] The Fidelity IRA was rolled over from a Prudential IRA shortly before the Petition Date.  The funds may still have been with Prudential on that date.  CGH served a garnishment summons on Prudential, but it failed to withhold the funds. As the garnishment summons was issued and served within the 90-day preference period before the petition date, the funds would have been recovered by the Debtor in any event.

(I) Unclassified claims

    A.    <u>Administrative Expenses</u>. Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash from the Fidelity account proceeds, on the effective date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due. Unpaid legal and accounting fees are estimated at $25,000.

    The most significant unpaid administrative expense is the tax liability on the liquidation of retirement assets. While it may be subject to deductions, the estimated liability is approximately $215,000, of which approximately $85,000 has been withheld.

    Also within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the effective date of the Plan, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). It is estimated that such fees on the plan disbursements will be about $5000-6000.

Total anticipated administrative expenses are estimated at $245,000

    B.    <u>Priority Taxes</u>: Allowed Priority Tax claims ($7927.51, proof of claim #1) shall be paid in full, with interest at the statutory rate on such claims, on the effective date of the Plan, from the Fidelity IRA proceeds.

(II) Classified Claims and Interests

    <u>Class A (Priority (non-tax) Claims)</u>: Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. No such claims have been filed or are believed to exist. To the extent any such claims exist, they shall be paid in full, in cash, by the Debtor on the effective date of the Plan, or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. This class is not impaired.

    <u>Class B (CGH Secured Claim)</u>: Class B consists of the secured claim of GGH Technologies, Inc., secured against Debtors' Residence and building lot, in the total amount of $323,547.10. Pursuant to the approved settlement agreement, the Class B claim shall be paid in full on the effective date of the Plan from Debtor's exempt Athene annuity and/or other exempt or non-estate assets, and shall retain its lien until paid. In the event that anything in the Plan is inconsistent with the Settlement Agreement, the terms of the Settlement Agreement shall control. This class is not impaired.

    <u>Class C (Rocket Mortgage Secured Claim).</u> Class C consists of the claim of Rocket Mortgage secured against the Debtor's residence. The Class C creditor shall retain its lien and Debtor shall pay this claim in full, over time, pursuant to the terms of the contract. Although the loan was current, the Proof of Claim reflects arrears of $4123.90 due to a

projected escrow shortage and the payment then due. All arrears due on the Effective Date shall be paid within 90 days of the Effective Date. This class is impaired.

Class D (General Unsecured Claims). Class D consists of all allowed General Unsecured Claims against the Debtor. The Class D claims shall be paid, pro rata, by disbursement of the Fidelity net proceeds on the effective date, subject to a $253,000 holdback (including the amount withheld for taxes from the Fidelity distribution) for estimated taxes and administrative and priority claims ($20,000 legal fees, $5000 accountant fees, $215,000 taxes, $5000 UST fees, and $8000 IRS priority claim).

Once such administrative and priority claims are paid, if there are funds remaining from the Fidelity proceeds holdback, a second distribution shall be made to pay the remaining funds to the Class D creditors. This class is impaired.

This class consists of:

| Claim # | Creditor | Amount |
|---|---|---|
| Scheduled | Bank of America | $5700 |
| Scheduled | Compton & Duling | $2000 |
| 1 | IRS | $3913.36 |
| 2 | Truist | $ 149 |
| 3 | Affirm | $2766.31 |
| 5 | CGH | $931,048.10 |

Total: $945,576.77

Fidelity: $526,367.83 less $85,340.97 withheld for taxes, less $167,659.03 additional holdback = $273,367.83 distribution to Class D, approximately 28.9%.

Class E (Subordinated Unsecured Claim of Deliese Owen) Class E is the subordinated unsecured claim of Deliese Owen, Debtor's wife. The Class E claim shall not be paid a monetary distribution, but the holder of that claim shall retain her 50% interest in the North Carolina building lot, free of any fraudulent transfer liability. This class is impaired.

As to all claims

Any party which contends that its claim is not listed in the correct class must object to the Plan or the classification will be deemed final.

Payments on any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in the undersigned counsel's attorney trust account until a Final Order is entered, and shall be paid to the creditor or refunded to the Debtors, as appropriate, upon entry of such a Final Order. Payments on claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court.

Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor.

Nothing herein shall constitute a waiver of the Debtor's right to object to any claim or an acknowledgement that such claim is valid or allowable.

## V.     Implementation of Plan

The Debtor shall fund this Plan from the proceeds from the liquidation of the Fidelity account, and from exempt and non-estate assets including the Athene annuity.  Debtor shall otherwise retain the exempt Assets of the estate.

Consistent with the provisions of this Plan, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction.  Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

The Debtor shall retain the exempt Assets of the estate, free and clear of all claims and interests of creditors except as specifically provided in the Plan.

It is estimated that the amounts required for implementation of the Plan upon the effective date and thereafter are as follows:

Administrative expense claims: $245,000 (Taxes, professional fees, US Trustee fees)

Priority tax claims: $8,000.

Class A: $0

Class B: $323,547.10 (from exempt assets)

Class C: $2794.41/month, to be paid from Debtor's household income.

Class D: $273,367.83

These funds are available from the Fidelity proceeds and, as to Class B, from the Athene annuity.  Debtor and his wife have sufficient income to pay the Class C mortgage.

## VI.     Analysis of Liquidation Value of the Estate

If the debtor's estate were liquidated by a trustee in a case under chapter 7 at the time of this Disclosure Statement, the estate would not exceed the amounts being distributed under

the Plan, and the amounts distributed to creditors would certainly be less. In the event of a Chapter 7 liquidation, all assets other than the Fidelity account would be fully exempt. The distribution would be conceptually the same in a Chapter 7, except that the Trustee would charge a commission of approximately $30,000 on the distribution, plus potentially additional legal and accounting fees.

### VII.  Repayment Projections

As provided above in Section IV, secured and priority claims are expected to be paid at 100%. General unsecured claims will be paid as provided above, about 28.9%.

### VIII.  Tax Consequences

The Debtor is not qualified to advise creditors of the specific tax ramifications to creditors of confirmation of the Plan and therefore makes no representations in this regard. However, the Debtor is not aware of any potential material federal tax consequences to creditors that would result from confirmation of the Plan. Each creditor is urged to consult with a tax advisor as to such matters.

With respect to the Debtor himself and the estate, the Debtor will owe taxes on the Athene withdrawal which can be paid from that asset, and the estate will owe taxes on the Fidelity distribution as described and provided for above. Any forgiveness of indebtedness would be exempt from taxation under IRC § 108 due to the discharge in bankruptcy.

### IX.  Feasibility/Income:

**A.**    The plan is feasible because the funds to make the payments are on hand.

Debtor's household income (wife's earnings) is currently about $8,000 monthly, after withholdings. This is sufficient to make the required mortgage payments and pay living expenses. Debtor will, to the extent necessary for living expenses, take withdrawals from his Athene annuity, and will be eligible for social security in late 2026. He hopes to find employment after completion of medical treatment in early/mid-2026, but the nature of such employment or its compensation would be speculative at this point.

***B.    Section 1129(a)(15) of the Bankruptcy Code requires that in order to confirm a plan of an individual debtor, if a holder of an unsecured claim objects, the value of the property to be distributed under the plan must be not less than the lesser of the value of the claim or the debtor's projected disposable income to be received during the 5-year period beginning on the date that the first payment is due under the plan. If any holder of an unsecured claim wishes to dispute whether Debtor's plan meets the requirements of § 1129(a)(15), it must file a timely objection to the Plan.***

### X.  Modifications or Withdrawals of the Plan

The Debtor may alter, amend, or modify the Plan under § 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code. The Debtor may also alter, amend, or modify the Plan under § 1127(b) of the Bankruptcy Code, following the Confirmation Date but prior to the Effective Date. The Debtor may revoke or withdraw the Plan prior to the Confirmation Date. If the Plan is revoked or withdrawn prior to the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn prior to the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to § 1127(e).

### XI.    Objections to Claims, Counterclaims, and Avoidance Actions

The Debtor believes that the claims resolution process should not delay Confirmation of the Plan.  The Debtor reserves the right to file objections to any Claims, either as currently filed or as may be amended.  In order to expedite payments to creditors, the Debtor seeks Confirmation notwithstanding the fact that he may dispute certain Claims. The fact that the Debtor has not objected to a particular Claim or has not indicated that it is disputed does not mean that the Debtor will not object to such Claim. Accordingly, the Debtor makes no representations either in the Plan or this Disclosure Statement as to the validity of any Claim filed, and Creditors should not make any assumption based upon the fact that no objection has yet been filed to any individual Claim. ***The Debtor shall file any objections to claims (other than as may be filed or amended after the date of filing of the Plan) on or before 60 days after the Effective Date.***

### XII.    Miscellaneous Plan Provisions

A.    Executory Contracts and Unexpired Leases.

Pursuant to Article VI of the Plan, any pre-petition Executory Contracts and Leases in effect as of the Effective Date and not specifically rejected will be deemed rejected as of the Effective Date.   Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, its Estate, Assets, or properties. All Rejection Claims shall be General Unsecured Claims.

B.    Retention of Jurisdiction, Closing.

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Plan provides for the Bankruptcy Court to retain exclusive jurisdiction over all matters relating to the Plan, including the allowance of Claims and the adjudication of any Avoidance Actions. Upon

13

substantial consummation of the plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a discharge. This provision serves to avoid the need to pay U.S. Trustee fees after substantial consummation.

### XIII. Discharge

Upon completion of all payments due to Classes A,B,D, and E, and administrative and priority creditors, the Debtor shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code.

### XIV. Conclusion

As stated previously, the Debtor is the proponent of the Plan and urges you to vote to accept the Plan. The information and materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. Since confirmation of the Plan will be binding on your interests, the Debtor invites you to review these materials and make such further inquiries as may be appropriate.

Dated: March 2, 2026.

Respectfully submitted,

/s/ Daniel M. Press
Daniel M. Press, VSB 37123
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
(703) 734-0590 fax
dpress@chung-press.com
Counsel for the Debtor